

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CINDEE MACK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | C.A. NO. 3:01-CV-2125-R |
| | § | |
| CENTER OPERATING COMPANY, | § | |
| L.P., | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S REPLY SUPPORTING ITS MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

The issue before this Court is whether it is appropriate for an attorney to review and strategically use in litigation privileged documents received suspiciously and outside the formal discovery process prior to seeking a determination on the privilege. *At best*, Plaintiff's attorneys received the Audit by an anonymous mailing and, despite the suspicious delivery and the bold notation: **"ATTORNEY/CLIENT PRIVILEGED DOCUMENT"** on the document, and despite knowing the communication was between the Defendant and its attorneys of record, chose to review and use the communication against COC. Given the privileged communication contains suggestions by COC's counsel for improving policies and practices to, among other things, assist COC in preventing and defending against employment related lawsuits, disqualification is the only way to protect the sanctity of the privilege and to prevent Plaintiff's counsel from using COC's privileged communications against it.

Although Plaintiff's attorneys proclaim their conduct was above reproach, this Court and COC are still left guessing as to how and when Plaintiff's counsel actually obtained the privileged communication. Conspicuously absent from Plaintiff's Response to Defendant's

Motion to Disqualify is any indication as to how or when her attorneys received the Audit. Importantly, Plaintiff's attorneys do not deny they strategically used the Audit in preparing Plaintiff's requests for admission and other discovery. Thus, it is clear that Plaintiff's counsel possessed the Audit for *at least four months* before disclosing it. Plaintiff's counsel cannot justify this delay in disclosing that they possessed the Audit. Rather, Plaintiff's counsel simply proclaim innocence alleging they were unaware that the Audit was, in fact, privileged.

Perhaps Plaintiff's counsel missed the front page of the Audit where it boldly states **"ATTORNEY/CLIENT PRIVILEGED DOCUMENT"** or Defendant's privilege log identifying the Audit as privileged. Plaintiff's counsel state that they believed COC hired its attorneys to audit its policies, practices and procedures in some consulting capacity other than as attorneys. Perhaps Plaintiff's counsel truly believe that only litigation-related communications are privileged and any consulting that an attorney provides to his/her client is somehow beyond the attorney/client privilege. Perhaps, but unlikely and, more importantly, irrelevant.

In reviewing the Audit, there can be no doubt that it is a privileged communication containing legal analysis with supporting case law, and no reasonable attorney could think otherwise. Plaintiff is asking this Court to put common sense aside and endorse a theory that encourages counsel to quickly review and strategically use potentially privileged communications prior to a court determination as to whether the communication is in fact privileged. Plaintiff's theory rewards surreptitious conduct—which, despite Plaintiff's counsel's contrary proclamation, is exactly what has occurred.

If Plaintiff's counsel were acting "above reproach" with regard to the Audit, why not inform Defendant as soon as they received the Audit and let this Court determine whether the Audit was privileged? Clearly, Plaintiff's counsel had the Audit *at least* as early as March 2002.

Why wait until July 16, 2002 to produce the Audit? Why file a motion to compel production of the Audit, continue to have discussions as to its privileged nature, and never disclose that they already possessed the document? The entire circumstances and Plaintiff's counsel's obvious silence as to how and when they received the Audit reflects a continued concealment and "catch me if you can" approach to the privilege issue that should not be condoned. Plaintiff's counsel knew that White Sims & Wiggins represented COC—they have been counsel of record since the inception of this lawsuit—and a simple review of the first couple of pages of the Audit reveals its privileged nature. More importantly, given the big, bold label of **"ATTORNEY/CLIENT PRIVILEGED DOCUMENT"** featured prominently on the front page of the document, even if they disputed the privilege, Plaintiff's counsel should have immediately notified COC's counsel that they obtained a copy of the Audit and allowed the Court to resolve the privilege issue—prior to digesting and strategically using the Audit.

Plaintiff's argument that this Motion is a tactical response to an allegation that Defendant lied is false and a thinly veiled attempt to distract the Court with side issues. Defendant does not agree that it has lied in any discovery answers and is prepared to address any specifics of these allegations in separate discovery motions if necessary. More importantly, the timing argument Plaintiff makes is self-defeating. The preparation of the Motion to Disqualify and discovery steps leading to it (such as specific questions in Plaintiff's deposition on August 5th) were clearly under way before the alleged August 16th conversation where Plaintiff's counsel suggested that some of Defendant's discovery answers were not accurate. If anything, the phone call from Plaintiff's counsel on August 16th was a reaction to the Plaintiff's deposition where Plaintiff's testimony revealed that Plaintiff had no legitimate basis for claiming that the Audit was not privileged.

### I. *The Audit is Clearly Privileged*

Plaintiff's argument that the Audit is not privileged is specious, *at best*. Plaintiff argues that the privilege has not been determined by the Court and because COC did not previously secure a ruling on the privilege, her attorneys were free to review and use the Audit as they saw fit. Plaintiff's argument endorses theft of privileged documents giving the receiving counsel incentive not to immediately disclose receipt of the documents and to digest and strategically use the contents, without fear of sanction. It also defeats the very purpose of the attorney/client privilege and discourages frank discussions with one's counsel for fear that a disloyal employee can, in essence, waive the privilege on a client's behalf.

Moreover, contrary to Plaintiff's assertion, COC had no affirmative obligation to obtain a ruling on its claim that the Audit is privileged to preserve the privilege. Pursuant to the Federal Rules of Civil Procedure, either party may ask for a hearing/ruling on discovery objections, including claims of privilege. *See* FED. R. CIV. P. 26(c) and 37(a)(2)(B). The normal course would be for the Defendant to assert the privilege in response to a request for production and for Plaintiff to seek a hearing if she disagreed and wanted to get and use the document in question. Here, Plaintiff circumvented this normal course by secretly getting the document through means outside normal discovery that remain undisclosed. The fact that the normal procedural path did not apply is Plaintiff's fault, not Defendant's.

COC's Motion to Disqualify provides this Court with competent evidence establishing the privilege. As established by the evidence supporting its Motion, COC sought the legal advice of its counsel regarding its legal options and obligations when it commissioned White Sims & Wiggins to review its policies, practices and procedures. The resulting Audit is by its own terms a communication by COC's attorneys in their capacity as legal counsel and provides

legal advice and suggestions for improving policies and practices to, among other things, assist COC in preventing and defending against employment related lawsuits. A simple review of the Audit, the analysis and suggestions contained therein, and the case law cited in support of the advice provided in the Audit leaves no room to doubt the privileged nature of the communication.

Plaintiff's argument that the correspondence from White Sims & Wiggins *prior* to the audit contains no "privilege" notation is irrelevant and unpersuasive. The simple fact that some earlier letter did not include the notation "attorney/client privileged communication" does not mean the communication is not privileged and certainly does not act to waive the privilege for any future related communications. Moreover, letters to set up meetings and other arrangements to conduct the investigation may not be privileged, but the resulting Audit cannot be compared to the administrative facilitation of the Audit. The Audit itself is clearly substantive and identified as an **"ATTORNEY/CLIENT PRIVILEGED DOCUMENT."**

Finally, Plaintiff's attorneys' alleged belief that an attorney's communication with his/her client is not privileged simply because the attorney is hired for "consultation" only is absurd. First, and as discussed in Defendant's Motion, Plaintiff's counsel, Katrina Patrick, admitted that after hearing her client's testimony, she realizes that the Audit is in fact privileged and she agreed to return all copies of the Audit. Second, all Plaintiff's counsel had to do was look at the cover page of the Audit to see that a potential privilege existed as the cover page identifies that the communication is from White Sims & Wiggins, COC's original counsel of record **in this litigation**, and states: **"ATTORNEY/CLIENT PRIVILEGED DOCUMENT."** Given the apparently suspicious way that Plaintiff's counsel received the Audit and given it was clearly a communication between COC and its attorneys, Plaintiff's attorneys were obligated to notify

COC's counsel that they received the Audit. Once COC notified Plaintiff's counsel of the privilege and requested its return, the parties could have obtained a definitive resolution from the Court.

Third, attorneys often provide consultation to their clients unrelated to actual or threatened litigation and no such litigation requirement is necessary to qualify for the attorney/client privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 394-395, 101 S.Ct. 677, 685 (1981); *Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 168 (Tex. App. – Houston [14th Dist.] 2000, pet. den'd); Tex. R. Evid. 503(b) (privilege applies to all communications made for the purpose of rendering legal services to a client). Moreover, this is not a situation where an attorney is hired to provide non-legal services. COC requested its attorneys to audit its employment policies and practices to ensure legal compliance and to prevent lawsuits. COC's attorneys provided legal advice regarding employment laws and COC's employment practices that, although not themselves discriminatory, may be used by potential plaintiffs asserting legal claims. This "legal advice" purpose is clear in the text of the Audit and the way it was labeled.

Simply put, even if Plaintiff's counsel truly believed the Audit was not a privileged communication, disqualification is still necessary. Given the evidence presented to this Court in support of Defendant's Motion to Disqualify and reviewing the Audit itself, there can be no doubt of the Audit's privilege and the impact it has already had on Plaintiff's counsel's trial strategy. Because Plaintiff's counsel has digested this sensitive, privileged information, disqualification is necessary to ensure a fair trial.

## II.  *COC Timely Moved to Disqualify Plaintiff's Counsel*

Plaintiff argues that COC brought this Motion untimely and only on the heels of her attorney's request that Defendant's current counsel review Defendant's Responses to Plaintiff's

Requests for Admission. However, Plaintiff's counsel's conduct *alone* caused any delay in the timing of Defendant's Motion. Plaintiff's counsel concealed from COC the fact that they possessed the Audit and only produced the Audit on July 16, 2002. As soon as Defendant discovered that Plaintiff's counsel possessed the Audit, it began researching and analyzing its options. Moreover, COC went forward with the previously scheduled depositions as it needed information from the Plaintiff regarding her possession of the Audit in order to assess issues relevant to the privilege. Given Plaintiff's counsel refused to disclose how she came to possess the document, COC believed at the time that Ms. Mack had provided the Audit to her counsel. COC questioned Ms. Mack during her deposition about her knowledge of her counsel's possession of the Audit and further questioned Mack to establish that she never personally hired White Sims & Wiggins and any communications between the law firm and Mack were in her capacity as a representative of COC.

Within a couple weeks after Plaintiff's deposition, COC filed its Motion to Disqualify Plaintiff's Counsel. This time was needed to get the transcript of the deposition and prepare the motion. Thus, COC timely moved for disqualification promptly after discovering Plaintiff's counsel possessed the privileged communications and obtaining needed testimony to support its Motion. On the other hand, Plaintiff's counsel possessed the Audit *at least* four months prior to disclosing that she possessed the document. In that time, Plaintiff's counsel made the decision to review, digest and strategically use the Audit. It was this decision by Plaintiff's counsel that resulted in the present need for a disqualification. If Plaintiff's counsel had simply held off on using the document and given this Court an opportunity to determine whether the Audit was privileged, this Motion would be unnecessary.

### *III.* *The Authority Cited in Plaintiff's Brief is Not Binding, and is Unpersuasive and Taken Out of Context*

Plaintiff provides this Court no authority prohibiting disqualification under the circumstances or otherwise condoning her counsel's actions in concealing, reviewing and strategically using the Audit. Plaintiff cites to *In re Dana Meador*, 968 S.W.2d 346 (Tex. 1998) as disapproving of disqualification when an attorney obtained obviously privileged communications that had been secretly removed from the defendant's office. Plaintiff also relies on *Meador* to suggest that ABA Formal Opinion 94-382 is inapplicable to this situation. Plaintiff's reliance is misplaced.

Plaintiff fails to note that the *Meador* court's opinion turned on the fact that the privileged communication at issue was merely a letter referencing a settlement agreement and reflecting that the settling party had agreed to give a sworn statement concerning the lawsuit before the court. The letter made no mention of the content of the required statement or other substantive advice. The *Meador* court ordered the return of the privileged communication but determined disqualification was not necessary because the information in the privileged communication did not significantly prejudice the claims or defenses asserted in the lawsuit. In so holding, the court emphasized:

> [A] lawyer who uses privileged information improperly obtained from an opponent potentially subverts the litigation process. While we do not exercise our rule-making authority via judicial opinion, we nonetheless agree with the court of appeals that ABA Formal Opinion 94-382 represents the standard to which attorneys should aspire in dealing with an opponent's privileged information.

*Id.* at 350 (internal citations omitted). The Audit is nothing like the superficial letter at issue in *Meador*. The Audit document at issue here is a detailed, substantive audit. Thus, the ABA Opinion should apply and Plaintiff's counsel did not comply with it.

Plaintiff also cites the case of *Montgomery County v. Microvote Corporation*, 175 F.3d 296 (3rd Cir. 1999) to support her contention that when a law firm acts as a consultant, there is no attorney/client privilege. Again, Plaintiff misrepresents to this Court the authority on which she relies. In *Montgomery County v. Microvote*, the Third Circuit determined the communications at issue were covered by the attorney/client privilege as they were made by a lawyer in performing the legal services sought by his client. In so holding, the Third Circuit stated:

> There may be evidence that the [defendant] chose the Webb law firm as a "consultant," but the loose use of the term does not alone denude a lawyer of his legal character. Engaging an attorney for consultant or advice in solving a serious legal problem no more strips him of his legal attributes than does the consultation with a doctor over a medical problem relieve the doctor of his medical attributes. ... It is very important in the practice of law ... that the [defendant] have complete freedom of consultation fostered by the attorney/client privilege. The services need not be rendered in conjunction with actual or potential litigation to qualify for the privilege.

*Id.* at 303.

Plaintiff next argues that "no exclusionary rules or privilege trumps the truth," apparently in support of her counsel's representation that the privileged communications can be used to impeach COC's witnesses. However, none of the cases Plaintiff cites support this allegation or even relate to the attorney/client privilege. Rather, all three cases cited by Plaintiff are criminal cases involving evidence that was excluded because the police conducted an illegal search and seizure or failed to appropriately provide the defendant with his *Miranda* rights. Under the particular circumstances identified in those cases, the courts allowed previously inadmissible evidence for impeachment purposes after the defendant took the stand, raised the issue and testified contrary to the inculpatory information. *See United States v. Havens*, 446 U.S. 620 (1980) (discussing evidence illegally seized from the defendant's baggage); *Paris v. New York*, 401 U.S. 222 (1971) (discussing statements made by defendant who was not given his *Miranda*

rights); *Oregon v. Hass*, 470 U.S. 714 (1975) (interpreting an Oregon constitutional prohibition against compulsory self-incrimination in criminal prosecutions after defendant requested an attorney). Plaintiff has provided this Court no authority condoning her attorneys' conduct or denying disqualification under circumstances similar to that before this Court.

### IV. *Disqualification is Warranted Under the Circumstances*

Under the circumstances of this case, disqualification is the only way to restore the parties to a position close to the one they had been in prior to the violation of the attorney/client privilege. It is clear that Plaintiff's counsel knew or should have known that the documents they received were considered privileged by the Defendant. Plaintiff's counsel chose to wait at least four months before notifying COC's attorneys that they received the communications. During the delay between the time that Plaintiff's counsel received the confidential communications and the notification of COC's counsel, Plaintiff's counsel reviewed, absorbed and used the privileged information to formulate Plaintiff's strategy in this litigation. There can be no doubt of the privileged information's significance given that Plaintiff's counsel has already strategically used the information and Patrick declared her intention to attempt to impeach COC's witnesses with what she knows is contained in the Audit. Plaintiff has not proven that COC or its counsel were at fault in the disclosure of the privileged document. Plaintiff makes vague, hearsay and conclusory allegations about "water cooler gossip" and the like but provides no genuine evidence of fault on Defendant's part, much less fault related to the document at issue here. Instead, Plaintiff's counsel continues to conceal how and when they received the privileged communication. In considering the possible prejudice to the parties, Plaintiff's inconvenience in having to obtain new counsel and the slight delay it may cause on this lawsuit must give way to the importance of maintaining the confidentiality of privileged information and avoiding the

prejudice inherent in allowing privileged communications to be used against the party to whom the privilege belongs.

Accordingly, COC requests that this Court take a position that is consistent with ABA guidelines and the integrity of the attorney-client privilege, and a position that makes it clear that concealment and secretive use of attorney-client privileged material carries a price. Plaintiff's counsel should be disqualified. COC moves this Court to prohibit Plaintiff's counsel from disclosing to Plaintiff's successor counsel any of her work product, as well as any documents or communications that reveal the contents of the privileged communication or Plaintiff's counsel's strategy in this lawsuit that was developed with knowledge of Defendant's privileged communications. Without such a remedy, the value and purpose behind Defendant's right to engage in privileged communications with its attorneys is lost.

Respectfully submitted,

_____
M. Scott McDonald
Texas State Bar No. 13555505
Ellen L. Perlioni
Texas State Bar No. 00794155
Brian D. Johnston
Texas State Bar No. 24032471

LITTLER MENDELSON
A Professional Corporation
2001 Ross Avenue, Suite 2600
LockBox 116
Dallas, Texas 75201.2931
214.880.8100
214.880.0181 (Fax)

Kevin B. Wiggins
Bar Card No. 21441600
H. Ron White
Bar Card No. 21303500
Tracey R. Wallace
Bar Card No. 00797617

WHITE & WIGGINS, L.L.P.
1999 Bryan Street, Suite 3470
Dallas, Texas 75201
214.665.4150
214.665.4170 (Fax)

**ATTORNEYS FOR DEFENDANT
CENTER OPERATING COMPANY, L.P.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via certified mail, return receipt requested on this 27th day of September, 2002 to the undersigned counsel of record:

Katrina Patrick
5177 Richmond Avenue, Suite 1275
Houston, Texas 77056

_____
M. Scott McDonald
Ellen L. Perlioni
Brian D. Johnston